```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
CYNTHIA CUMMINGS, ANDRE LAKE, BARBARA                                  :
EDMONDS, LINDA MCPHERSON, JAHMILA                                      :
EDWARDS, CYNTHIA MCCRIGHT, and BEVERLY                                 :
PERES, as Trustees of DISTRICT COUNCIL 37,                             :      23-cv-5244 (LJL)
LOCAL 95 HEAD START EMPLOYEES WELFARE                                  :
FUND,                                                                  :      MEMORANDUM AND
                                                                       :           ORDER
                            Plaintiffs,                                :
                                                                       :
             -v-                                                       :
                                                                       :
QUICK START DAY CARE CENTER INC. and JANE                              :
DOES (the foregoing names being fictitious and unknown                 :
to Plaintiffs at the present time, all of whom are                     :
responsible officers, directors and/or representatives of              :
the corporate Defendant named above),                                  :
                                                                       :
                            Defendants.                                :
                                                                       :
-----------------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Cynthia Cummings, Andre Lake, Barbara Edmonds, Linda McPherson, Jahmila Edwards, Cynthia McCright, and Beverly Peres (collectively the "Plaintiffs") as Trustees of the District Council 37, Local 95 Head Start Employees Welfare Fund (the "Fund") bring an action against Quick Start Day Care Center Inc. ("Quick Start"), and Jane Doe(s), as officers, directors, and representatives of Quick Start (together with Quick Start, the "Defendants"), to recover unpaid fringe benefits allegedly owed to the Fund. Plaintiffs claim that Defendants violated the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the applicable Collective Bargaining Agreement (the "CBA") and Trust Agreement (the "Trust Agreement") between

Quick Start and the District Council 37, Head Start Local 95, Community and Social Agency Employees Union, AFSCME, AFL-CIO (the "Union").  *See* Dkt. No. 1 (the "Complaint").

Plaintiffs served Quick Start with copies of the summons and Complaint on July 6, 2023.  *See* Dkt. No. 6.  When Quick Start failed to answer or otherwise respond to the Complaint, Plaintiffs sought and obtained a Certificate of Default as to Quick Start.  *See* Dkt. No. 11.  Plaintiffs then moved for default judgment against Quick Start.  Dkt. No. 14.  For the reasons that follow, the motion is granted in part.

## BACKGROUND

The well-pleaded allegations of the Complaint are taken as true for the purposes of a motion for default judgment.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." (internal quotation marks omitted)).

Quick Start is a not-for-profit corporation organized and existing under the laws of the State of New York.  Dkt. No. 1 ¶ 7.  The Fund is an employee benefit welfare plan—operated in accordance with the Trust Agreement—the purpose of which is, in part, to receive and collect required employee benefit contributions from Quick Start, and to provide health care benefits for eligible employees pursuant to the CBA.  *Id.* ¶¶ 4, 6.  Plaintiffs are fiduciaries of the Fund.  *Id.* ¶ 4.  Plaintiffs assert that pursuant to the CBA, which governs rates of pay, wages, hours, and other conditions of employment for the members of the Union, Quick Start was obligated to contribute agreed-upon amounts to the Fund so that covered employees could receive health care benefits through the Fund.  *Id.* ¶ 13.  The Trust Agreement states if Quick Start does not make the required fringe benefit contributions it "shall be liable to the Fund for all contributions owed, together with liquidated damages, interest, attorneys' fees, court costs, and audit fees, all in

accordance with ERISA." *Id.* ¶ 14.

The Complaint states four claims for relief. First, Plaintiffs allege that Quick Start violated the CBA and the Trust Agreement by failing to pay the Fund required fringe benefit contributions for the months of March and April 2022. *Id.* ¶¶ 11–18. Second, Plaintiffs allege that Quick Start's failure to make the required fringe benefit contributions constitutes a violation of ERISA and the LMRA. *Id.* ¶¶ 19–25. Third, Plaintiffs allege that Quick Start and the Jane Doe(s) who are its responsible officers, directors, and/or representatives, violated ERISA's dictate that fiduciaries "discharge their duties with respect to ERISA covered plans 'solely in the interest of the participants and beneficiaries' and 'for the exclusive purpose of providing benefits' and 'defraying reasonable administrative expenses,'" *id.* ¶ 27 (quoting ERISA, 29 U.S.C. §1104(a)(1)(A)), by wrongly diverting plan assets for their own use and benefit, *id.* ¶¶ 26–33. Finally, Plaintiffs allege that Quick Start and the Jane Doe(s), as parties in interest with respect to the Fund, violated ERISA by using plan assets in certain transactions for their own benefit. *Id.* ¶¶ 34–38.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see*

3

*also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted).  "The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."  *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020).  Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law."  *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).  A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Federal Rule of Civil Procedure 55(c), which "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party."  *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor."  *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).  A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [his] claim for damages with evidence to prove the extent of those damages."  *Hood v. Ascent Med. Corp.*. 2016 WL

1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

Plaintiffs raise claims for violations of the CBA and the Trust Agreement, ERISA, and the LMRA. The Court will consider in turn whether the well-pleaded allegations establish Defendants' liability and, if so, what the appropriate award of damages is. The Court will then consider the request for attorney's fees and costs.

**I.     Plaintiffs' Claims**

**A.     Liability**

Plaintiffs' first and second causes of action are for contributions that Quick Start was obligated to make to the Fund for the months of March 2022 and April 2022. Dkt. No. 1 ¶¶ 11–25. Plaintiffs first claim that Quick Start's failure to make contributions to the Fund for the months of March and April 2022 violated the CBA and the Trust Agreement. *Id.* ¶¶ 11–18. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F.Supp.3d 205, 213 (S.D.N.Y. 2021) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). Plaintiffs next

5

claim that Quick Start's failure to make contributions to the Fund for the months of March and April 2022 violated ERISA, 29 U.S.C. § 1145.  Dkt. No. 1 ¶¶ 19–25.  Section 1145 of ERISA requires that "every employer who is obligated to make contributions . . . under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C § 1145.  ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer in relation to an employee benefit plan."  29 U.S.C. § 1002(5); *see Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2d Cir. 1995) (applying this definition of "employer" to 29 U.S.C. § 1145).

The well-pleaded allegations of the Complaint, along with the incorporated Exhibits, establish that Quick Start did not make the necessary contributions to the Fund, as required by the CBA, the Trust Agreement, and ERISA.  Dkt. No. 1 ¶¶ 11–25; Dkt. No. 15-4; Dkt. No. 15-5.  Plaintiffs have submitted copies of the CBA, Dkt. No. 15-4, and the Trust Agreement, Dkt. No. 15-5.  Article XII, Section 2 of the CBA states that "[a]ll Medical Benefits and supplemental benefits for employees covered by this Agreement will be provided through the District Council 37 / 1707 Local 95 Head Start Employees Welfare Fund . . . ."  Dkt. No. 15-4 at ECF p. 2.  The Trust Agreement, meanwhile, states that "[t]he Trustees shall receive and accept contributions from the Employers for the benefit of the Employees . . . ."  Dkt. No. 15-5 at 2.  Further, the Trust Agreement also provides:

> Any Employer who fails to make contributions shall be obligated to pay all of the following:
>
>     (a) The unpaid contributions;
>
>     (b) interest on the unpaid contributions at the rate of one and one-half (1-1/2%) percent per month;
>
>     (c) an amount equal to the greater of—

>> (i) interest on the unpaid contributions at the rate specified in (b) above; or
>>
>> (ii) liquidated damages of twenty percent (20%) (or such higher percentage as the law allows) of the amount of the unpaid contributions;
>
> (d) attorney's fees and costs of any action necessary to recover any of the amounts described in (a) through (c); and
>
> (e) Such other amounts as a court may award in the situation in which the Fund institutes judicial proceedings to collect delinquent contributions.

*Id.* at 6–7. Plaintiffs also submitted an unpaid invoice in the amount of $7,134.25 for the month of March 2022, Dkt. No. 15-6 at ECF p. 2, and an unpaid invoice in the amount of $7,204.70 for the month of April 2022, *id.* at ECF p. 5. Finally, Plaintiffs attached to their Complaint a calculation of interest owed on the unpaid invoices, calculated at a rate of 1.00% per month non-compounding, totaling $2,182.00, Dkt. No. 1-1, and attached to their declaration in support of their motion an updated calculation of interest through the date that the certificate of default was entered, totaling $2,926.02, Dkt. No. 15-8.

The Court accepts that Quick Start failed to pay the delinquent contributions despite receiving demands for payment, as this is established by the well-pleaded and admitted-through-default allegations of the Complaint. As such, Plaintiffs' motion for default judgment is granted with respect to the first and second causes of action.[1]

---

[1] Plaintiffs also move for default judgment on their third and fourth causes of action as against Quick Start and the Jane Doe(s)—Quick Start's responsible officers, directors and/or representatives—for all withheld or diverted plan assets that remain unpaid, interest, liquidated damages, and the costs and fees of collection, as well as for any profits that Quick Start and the Jane Doe(s) made through use and retention of the plan assets of the Fund. Dkt. No. 1 ¶¶ 26–38.

Specifically, Plaintiffs' third claim is that Quick Start and the Jane Doe(s) violated ERISA's dictate that they discharge their duties with respect to a plan "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Fiduciaries under ERISA are bound by "a number of detailed

**B.     Damages**

The Court will award damages in the amount supported by the invoices offered by

---

duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993) (internal quotation marks omitted) (alteration in original). "To state a claim for breach of fiduciary duty [under ERISA], a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty." *Cunningham v. USI Ins. Servs., LLC*, 2022 WL 889164, at *2 (S.D.N.Y. Mar. 25, 2022).

Finally, Plaintiffs bring their fourth cause of action against Quick Start and the Jane Doe(s) for violating ERISA by utilizing plan assets for their own personal benefit. *See* 29 U.S.C. §§ 1106(a)–(b). Section 1106(a) "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000) (quoting *Commissioner v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)). Section 1106(b), meanwhile, "codifie[s]" the fiduciary's general duty of loyalty under ERISA. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987). "Though '[t]he standards for fiduciary conduct in §§ 1104 and 1106 may overlap,' breaching one of these provisions 'does not necessarily' imply that the other has been violated as well." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 970 (2d Cir. 2023) (quoting *Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019)).

The facts as currently alleged in the Complaint do not constitute a valid cause of action for breach of fiduciary duty under ERISA by Quick Start and the Jane Doe(s). First, Plaintiffs have not sufficiently pleaded that Quick Start or the unnamed Jane Doe(s) are ERISA fiduciaries. Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). "Thus, to hold [a defendant] personally liable under § 409(a) of ERISA, 29 U.S.C. § 1109(a), Plaintiffs must demonstrate that (1) [the] unpaid contributions constitute plan assets; and (2) [the defendant] exercised sufficient control over the assets to make him an ERISA fiduciary." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Nguyen*, 2017 WL 698606, at *4 (S.D.N.Y. Feb. 17, 2017). But, "in the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan." *In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009). Plaintiffs assert in their declaration that the Trust Agreement does include such a provision "to the contrary" and identify that provision as Section 2.6, *see* Dkt. No. 15 ¶ 12, but the version of the Trust Agreement attached to the declaration does not include a Section 2.6, and the Court is unable to identify another section defining unpaid contributions as assets of the plan, *see* Dkt. No. 15-5. Further, Plaintiffs do not identify the Jane Doe(s) so the Court is unable to identify whether they exercised control over the assets.

8

Plaintiffs—$14,338.95, plus interest at the rate of 1.00% per month (non-compounded), *see* Dkt. No. 1-1; Dkt. No. 15 ¶ 14; Dkt. No. 15-7.  Pursuant to the Trust Agreement and 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are also entitled to liquidated damages.  In addition to the applicable provision of the Trust Agreement, Dkt. No. 15-5 at 6–7, Section 1132(g)(2)(C) of ERISA provides that "the court shall award the plan . . . (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]."  29 U.S.C. § 1132(g)(2)(C). The Court will therefore grant, as Plaintiffs have requested, liquidated damages in the amount of 20% of the delinquent contributions, equal to $2,867.79.  Finally, pursuant to both the Trust Agreement and 29 U.S.C. § 1132(g)(2)(B)–(D), the Court will award Plaintiffs attorneys' fees and cost as outlined below.

## II.     Attorneys' Fees and Costs

Plaintiffs seek attorneys' fees and costs pursuant to the CBA, the Trust Agreement, and ERISA for their first and second causes of action.  As the CBA, the Trust Agreement, and ERISA provide for an award of attorneys' fees and costs for a successful enforcement action, the Court will award them here.

As a general matter, the "starting point" in analyzing whether claimed attorney's fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Milea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended).  The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application.  *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011).

A court's focus is "on setting a reasonable hourly rate, taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008). The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190. When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, a court may reduce the requested rate. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). Once a court has determined the appropriate hourly rate, it must also examine whether the number of hours billed was reasonable. The court "should exclude excessive, redundant or otherwise unnecessary hours[.]" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

An attorneys' fees award may also include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). These "costs" may include photocopying, travel, telephone costs, *id.*, as well as filing fees and reasonable process-server fees, *Rosendo v. Everbrighten Inc.*, 2015 WL 1600057, at *9 (S.D.N.Y. Apr. 7, 2015), *report and recommendation adopted*, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

The Court has reviewed the submissions of Plaintiffs' counsel documenting the hours worked and the activities performed in support of this action. Dkt. No. 15 ¶¶ 17–19; Dkt. No. 15-8. It accepts the costs figure of $479.50, which is comprised entirely of filing fees. Plaintiffs' counsel also submits a figure of 18.15 hours expended on the ERISA-related issues by attorneys on this case and supports this submission with contemporaneous time records. The amount of time expended is reasonable in this case. *See, e.g.*, *Trustees of Drywall Tapers & Pointers Local Union No. 1974 Benefit Funds v. Excellence Drywall, LLC*, 2020 WL 9815185,

at *3 (S.D.N.Y. Aug. 14, 2020), *report and recommendation adopted as modified*, 2020 WL 9815254 (S.D.N.Y. Sept. 21, 2020) (concluding that 12.9 hours is a reasonable number of hours expended on an ERISA default-judgment case); *Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. B&L Moving & Installation, Inc.*, 2017 WL 4277175, at *8 (S.D.N.Y. Sept. 26, 2017) (reducing number of hours awarded in ERISA default-judgment case to 30.35), *report and recommendation adopted*, 2018 WL 705316 (S.D.N.Y. Feb. 5, 2018).  The hourly rate of $300 for attorneys Paul Brown and Matthew Hromadka is reasonable given their experience,[2] and the rate charged in this matter for the partner's time[3] is consistent with, at $350 per hour, the rate accepted for other recent ERISA cases before this Court.  *See Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, 2021 WL 2556130 (S.D.N.Y. May 13, 2021), *report and recommendation adopted*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021) (awarding hourly rate of $350 for partner time in a default-judgment case); *Broach v. Metro. Exposition Servs., Inc.*, 2020 WL 3892509, at *9 (S.D.N.Y. July 10, 2020) (noting that "[c]ourts in this district have approved partner billing rates that range from $350 per hour to $425 per hour in ERISA delinquent contribution cases" and awarding hourly rate of $295 for counsel's time).  Finally, the hourly rate of $125 for paralegal Amanda Reuschle is consistent with rates accepted for other ERISA cases in this district.  *See Bd. of Trustees of Am. Fed'n of*

---

[2] Though Mr. Versocki does not indicate in his declaration when Mr. Brown and Mr. Hromadka were admitted to the bar, Mr. Hromadka appears to have been practicing in federal court for at least four years, *see In re Manhattan Jeep Chrysler Dodge, Inc.*, 599 B.R. 247 (Bankr. S.D.N.Y. 2019), and Mr. Brown appears to have been practicing in federal court for at least four years, *see MSG Arena, LLC v. Int'l Brotherhood of Electrical Workers, Local 3*, 2019 WL 13246788 (S.D.N.Y. May 14, 2019).

[3] Although Mr. Versocki's declaration states that his hourly rate is $350, it also states that his fee for one and one-half hour of time spent preparing the motion for default judgment totaled $450 (representing an hourly rate of $300).  Dkt. No. 15 ¶ 18.  The Court will adhere to the more specific figure, and accept Mr. Versocki's asserted fee for his time spent on the motion, $450.

*Musicians & Employers' Pension Fund v. Banos*, 2019 WL 2477316, at *6 (S.D.N.Y. May 24, 2019) (holding that paralegal fees of $125–$129 were reasonable), *report and recommendation adopted as modified*, 2019 WL 2473452 (S.D.N.Y. June 13, 2019).  The Court will therefore award $4,896.25 in attorneys' fees (13 hours for Mr. Brown and Mr. Hromadka at an hourly rate of $300, 0.4 hours of partner time at an hourly rate of $350, 1.5 hours of partner time at an hourly rate of $300, and 3.25 hours of paralegal time at an hourly rate of $125) plus $479.50 in costs.

## CONCLUSION

The motion for default judgment is GRANTED in part.  Plaintiffs are directed to inform the Court within fourteen days by a letter posted on the docket whether they prefer:

(i)     That the Court enter a Judgment in their favor for unpaid contributions of $14,338.95, with interest at the rate of 1.00% per month (non-compounded), and liquidated damages in the amount of $2,867.79, on behalf of the Fund for Quick Start's delinquent contributions, along with attorneys' fees and costs of $5,375.75, pursuant to the CBA, the Trust Agreement, and ERISA, and for the Court to dismiss the third and fourth causes of action; or

(i)     That the Court grant them leave to amend the Complaint in support of the third and fourth causes of action.

Plaintiffs are further directed to—if they prefer the first option—attach to their letter a proposed Judgment in accordance with the above.

The Clerk of Court is respectfully directed to close Dkt. No. 14.

SO ORDERED.

Dated: January 5, 2024
      New York, New York

                                               LEWIS J. LIMAN
                                         United States District Judge